## COURT OF APPEALS, NOV. TERM, 1801.

### CARBERRY et ux. et al. vs. TANNEHILL, et al.

A contract must in all respects be full, fair and honest, in the beginning, and the performance of it fairly and consciontiously required or the court of chancery will not enforce it.

If two persons agree about the purchase and sale of land, the quantity of which is understood by each to be 300 acres, but from a real mistake of the scrivener only 200 acres are conveyed and the mistake is discovered, and both parties are apprised that there are in the tract 400 instead of 300 acres, on which quantity the price had been fixed—The court of chancery will not decree the surplus 100 acres; and there being circumstances proving the bargain a hard one, it will not enforce the contract as to the other 100 acres.

APPEAL from a decree of the Court of Chancery, *dismissing* the bill of complaint praying for the specific performance of an agreement to convey land. The facts appear in the decree of the chancellor.

HANSON, Chancellor, (11th February 1801.) The jurisdiction exercised by this court with respect to agreements, although long since settled, seems to be little understood. The great leading principle is, that whether or not this court, on application, will compel a specific performance of a contract, is a matter of sound discretion, on consideration of all the circumstances, and from those circumstances it must appear, not only that the contract was in all respects full, fair and honest in the beginning, but that the performance of it may be fairly and conscientiously required. This court will not otherwise enforce it. The defendant, *Tannehill*, a minor, it seems, had from his deceased father a patrimony, which to judge from the contract he made with the complainant, was worth only £1900, and during the few years of his minority the complainant, *Schnertzell*, made him a debtor to the amount of nearly one half his fortune. About twelve months before his arrival at age, *Schnertzell* enters into a written contract with him for the purchase of his land. But the youth, although illiterate and weak, finds that he cannot reasonably be required to perform the contract. He cannot be compelled to do so, and the contract is given up. On his arrival at age, another contract is proposed; the same price is to be paid for the land; but the mode of payment is to be

different. The contract is made, but not reduced to writing. In consequence of it, *Tannehill* executes a conveyance; the account of *Schnertzell* for articles furnished during *Tannehill's* minority, to the amount nearly of one half of his fortune as before mentioned, having been deducted from the price. It appears from the evidence, that several articles in the account are charged at an unreasonable price; and that at the time of the contract, the land was worth more than £7 per acre; that is to say, that 336 acres were worth more than £2352. But it seems that only 291 acres were conveyed, (which at the aforesaid rate, were worth above £2037,) instead of 336 acres, which quantity, according to *Tannehill's* idea, he had agreed to sell, and was the whole he possessed. It appears further, that 336 acres were the quantity contemplated by the parties when treating on the sale. Well— *Schnertzell* having had his account against the minor allowed in full, and having secured 291 acres, now insists that inasmuch as he meant to purchase, and *Tannehill* thought he had sold, all the land he possessed, he shall convey all the residue not conveyed, although that residue with the land conveyed, makes up 365 acres; and that the other defendant, *Davis*, who had purchased the residue, or part thereof, with notice, shall also convey.

There is reason to believe that *Tannehill's* title papers had been put into the hands of *Faw*, who acted as scrivener, and it is stated that he nevertheless made a mistake in the deed. But possibly that mistake might have been beneficial to his employer; because if the deed had mentioned and described all the three parcels, of which *Tannehill's* land consisted, and if *Tannehill* possessed the least share of discretion, he would have read, before he signed and sealed, and would thence have discovered his title to more than one parcel, and to a greater quantity than 336 acres. Now putting the case as fairly for *Schnertzell*, as the bill, answer, and testimony can possibly admit, it amounts to this—The parties agree about the purchase and sale of land, the quantity of which is understood

by each to be 336 acres. From a real mistake of the scrivener, only 291 acres are conveyed. *Schnertzell* discovers the mistake, and both parties are apprised that there are in the three parcels held by *Tannehill* 365 acres, instead of 336 on which quantity the price had been fixed. On what principle shall this court then give *Schnertzell* the surplus of 29 acres? Supposing the whole 365 acres, instead of 336, to have been conveyed, would it not be reasonable for this court, on *Tannehill's* application, to grant him relief? Certainly it would be so! and therefore it cannot be reasonable to decree *Schnertzell* the surplus he sues for.

Taking all the circumstances, as they are already stated, this case has not that complexion which entitles *Schnertzell* to any kind of relief from this court. The circumstances indeed are such that he may consider himself sufficiently successful in having secured a legal title to the 291 acres.

To shew that he decides on settled principles, the chancellor only refers generally to the books on the head of bargains, &c.

*Decreed* that the bill be *dismissed*, with costs to the defendants.

*Key* and *Johnson*, for the Complainants.

*Martin*, (Attorney General,) and *Shaaff*, for the Defendants.

The Complainants appealed to this Court; but the case having been compromised, the appeal was *dismissed* at this term.